**NATIONAL MINING ASSOCIATION, Appellant**

v.

**UNITED STATES DEPARTMENT OF THE INTERIOR, et al., Appellees.**

Nos. 95–5434 to 95–5436.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 9, 1996.

Decided Jan. 31, 1997.

As Amended Jan. 31, 1997.

J. Michael Klise, Washington, DC, argued the cause for appellant, with whom John A. Macleod, Thomas C. Means, and Harold P. Quinn, Jr., were on the briefs.

Jonathan F. Klein, Attorney, U.S. Department of Justice, Washington, DC, argued the cause for appellees, with whom Lois J. Schiffer, Assistant Attorney General, and Jacques B. Gelin, Attorney, were on the brief. Richard M. Hall, Attorney, U.S. Department of Justice, entered an appearance.

Glenn P. Sugameli, Washington, DC, was on the brief for appellee National Wildlife Federation.

Before: EDWARDS, Chief Judge, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Under the Surface Mining Control and Reclamation Act ("SMCRA"), a coal mining operation must obtain a permit before commencing surface mining. Appellant National Mining Association challenges three sets of regulations promulgated by the Department of Interior's Office of Surface Mining Reclamation and Enforcement ("OSM") under SMCRA: the "ownership and control" rule, the "permit-information" rule, and the "permit-rescission" rule.

We hold that the ownership and control rule violates step one of *Chevron.* Section 510(c) of SMCRA states that when any surface coal mining operation "owned or controlled by the applicant" is currently in violation of SMCRA, a permit shall not be issued. 30 U.S.C. § 1260(c) (1994). In this section, Congress spoke precisely to the question of whose violations are relevant before an applicant's permit can be blocked. The ownership and control rule, however, sweeps much more broadly—blocking permits if an operation owned or controlled "by either the applicant or *by any person who owns and controls the applicant*" is currently in violation of SMCRA, 30 C.F.R. § 773.15(b)(1) (1995) (emphasis added). The rule conflicts with the plain meaning of section 510(c) and, therefore, is unlawful. In addition, because the permit-information rule and the permit-rescission rule are centered on the ownership and control rule, they too must fall.

## I. BACKGROUND

In 1977, Congress enacted SMCRA, 30 U.S.C. § 1201 *et seq.* (1994), "to establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations," *id.* § 1202(a). OSM administers and enforces SMCRA. *See id.* § 1211(c). States may assume jurisdiction over operations within their borders by developing a regulatory program meeting the standards of SMCRA and approved by OSM. *See id.* § 1253.

Under SMCRA, no person may engage in surface coal mining operations without a permit from the appropriate regulatory authority. *See id.* § 1256(a). Section 510(c) requires that applicants file a schedule listing any notices of violation they have received in the prior three years and the final resolution of any such notices. *See id.* § 1260(c). Where that or other information indicates that any surface coal mining operation "owned or controlled by the applicant" is currently in violation of SMCRA, "the permit shall not be issued" until the applicant submits proof that the violation has been or is being corrected. *Id.*

In 1988, OSM issued the ownership and control rule. *See* 53 Fed.Reg. 38,868 (1988); *see also* 30 C.F.R. §§ 773.5, 773.15(b) (1995). Section 773.5 states that certain relationships constitute ownership or control of mining operations and that other relationships are presumed to constitute ownership or control. *See* 30 C.F.R. § 773.5. Under section 773.15(b)(1), if OSM or the state regulatory authority concludes that "any surface coal mining and reclamation operation owned or controlled by either the applicant or by any person who owns or controls the applicant" is currently in violation of SMCRA, it "shall not issue the permit." *Id.* § 773.15(b)(1). Together, these regulations "track ownership up and down a corporate chain," 53 Fed.Reg. at 38,875—as well as across that chain—so long as control is present.

In 1989, OSM promulgated the permit-information rule in order to conform the permit application requirements to the ownership and control rule. *See* 54 Fed.Reg. 8,982 (1989); *see also* §§ 773.17(i), 778.10, 778.13, 778.14, 843.11(g) (1995). The permit-information rule provides that permit applications must contain, *inter alia,* information about the applicant's corporate structure, those who own or control the applicant, and mining operations owned or controlled by the applicant or by any person who owns or controls the applicant. *See* 30 C.F.R. § 778.13(a)-(d). The rule also requires that permit applications contain information regarding permit suspensions and revocations, unabated cessation orders, and violation notices received in the preceding three years

by any surface coal mining operation owned or controlled by the applicant or by any entity that owns or controls the applicant. *See id.* § 778.14(a)-(c).

Finally, OSM promulgated the permit-rescission rule. *See* 54 Fed.Reg. 18,438 (1989); *see also* 30 C.F.R. §§ 773.20, 773.21, 843.21 (1995). This rule establishes procedures for revoking permits that violate the ownership and control rule.

Appellant National Mining Association filed suit, challenging the ownership and control rule, the permit-information rule, and the permit-rescission rule. The parties cross-moved for summary judgment. On August 31, 1995, the District Court granted summary judgment in favor of OSM on all claims. *See National Wildlife Fed'n v. Babbitt,* Civ. Nos.88–3117, 88–3464, 88–3470 (consolidated) (Aug. 31, 1995), slip op. at 25, 1995 WL 704973, *reprinted in* Joint Appendix ("J.A") 167; *National Wildlife Fed'n v. Babbitt,* Civ. Nos. 89–1130, 89–1167 (consolidated) (Aug. 31, 1995), slip op. at 12, 1995 WL 702504, *reprinted in* J.A. 180; *National Wildlife Fed'n v. Babbitt,* Civ. Nos. 89–1751,-89–1811 (consolidated) (Aug. 31, 1995), slip op. at 19, 41 ERC 1529, *reprinted in* J.A. 200.

## II. ANALYSIS

In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court set out the now-familiar two-step test for reviewing an agency's interpretation of a statute. First, the reviewing court must ask "whether Congress has directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. at 2781. If so, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781. If, however, "the statute is silent or ambiguous with respect to the specific issue," the reviewing court must defer to the agency's construction of the statute if it is reasonable. *Id.* at 843, 104 S.Ct. at 2782.

■ We hold that this case is controlled by the first step of *Chevron.* Section 510(c) of SMCRA is unmistakably clear. It states

that when "any surface coal mining operation *owned or controlled by the applicant*" is currently in violation of SMCRA, the permit shall not be issued. 30 U.S.C. § 1260(c) (emphasis added). In this language, Congress spoke precisely to the question at issue—namely, whose violations are relevant before an applicant's permit can be blocked. On this question, therefore, there is no gap for the agency to fill—once OSM (or the state regulatory authority) has determined who the "applicant" is, it may only consider the violations of operations owned or controlled *by* the applicant. The ownership and control rule, however, sweeps much more broadly, blocking permits if an operation owned or controlled "by either the applicant or *by any person who owns and controls the applicant*" is currently in violation of SMCRA, 30 C.F.R. § 773.15(b)(1) (emphasis added). Because the ownership and control rule conflicts with the plain meaning of section 510(c), it is unlawful.

■ OSM points to the general rulemaking provisions of SMCRA, *see* 30 U.S.C. §§ 1211(c)(1)-(2), 1242(a), 1251(b) (1994), to justify its ownership and control rule. These provisions do not, however, permit OSM to trump Congress's specific statutory directive in section 510(c). As we stated in *American Petroleum Institute v. EPA,* 52 F.3d 1113 (D.C.Cir.1995), "EPA cannot rely on its general authority to make rules necessary to carry out its functions when a specific statutory directive defines the relevant functions of EPA in a particular area." *Id.* at 1119; *see also Natural Resources Defense Council, Inc. v. Reilly,* 976 F.2d 36, 41 (D.C.Cir.1992); *Sierra Club v. EPA,* 719 F.2d 436, 455 (D.C.Cir.1983). Indeed, in *In re Permanent Surface Mining Regulation Litigation,* 653 F.2d 514 (D.C.Cir.1981) (en banc), we explicitly noted that the general rulemaking provisions of SMCRA do not provide OSM with " '*carte blanche* authority to promulgate any rules, on any matter.' " *Id.* at 523 (quoting *Citizens to Save Spencer County v. EPA,* 600 F.2d 844, 873 (D.C.Cir.1979)). Thus, even though these provisions grant OSM some substantive power, *see id.,* "the power to issue regulations is not the power to issue *any* regulations," *id.* at 524.

Appellee National Wildlife Federation argues that because Congress did not specifi-

cally preclude OSM from reaching the applicant's owner (and those that the applicant's owner owns or controls), we should defer to OSM's interpretation of the statute under the second step of *Chevron*. *See* Brief for Appellee National Wildlife Federation at 11, 14–15. We reject this extreme position. As the *en banc* court has stated:

> To suggest . . . that *Chevron* step two is implicated any time a statute does not expressly *negate* the existence of a claimed administrative power (*i.e.* when the statute is not written in "thou shalt not" terms), is both flatly unfaithful to the principles of administrative law . . . and refuted by precedent. Were courts to *presume* a delegation of power absent an express *withholding* of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well.

*Railway Labor Executives' Ass'n v. National Mediation Bd.*, 29 F.3d 655, 671 (D.C.Cir. 1994) (en banc) (citations omitted); *see also American Petroleum Inst.*, 52 F.3d at 1120 ("[W]e will not presume a delegation of power based solely on the fact that there is not an express withholding of such power.").

■ OSM is attempting to use section 510(c) to regulate those not covered by that section. It claims that a parade of horribles will result if it is not permitted to regulate as it sees fit under section 510(c). Yet, blocking permits under section 510(c) is not the only regulatory mechanism under SMCRA. For those currently in violation of SMCRA, OSM may issue a cessation order, *see* 30 U.S.C. § 1271(a) (1994), or assess civil penalties, *see id.* § 1268(a). In addition, OSM has leeway in determining *who* the "applicant" is. As appellant concedes, OSM has the authority, in instances where there is subterfuge, to pierce the corporate veil in order to identify the real applicant. But once OSM has determined that it has the true applicant before it, OSM's power is constrained by the specific statutory language of section 510(c)—only those violations of operations owned or controlled *by* the applicant are relevant.

Appellee National Wildlife Federation asserts that the information requirements of sections 507(b)(4) and (b)(5), 30 U.S.C. § 1257(b)(4)-(5) (1994), would be rendered superfluous if OSM or the state regulatory authority is only permitted to look at operations owned or controlled by the applicant. We reject this argument. In the first place, some of the information required under section 507(b) is relevant to other statutory provisions. For example, section 507(b)(4)'s requirement that a corporate applicant provide information pertaining to its officers and directors can be used to identify individuals subject to civil penalties under section 518(f). *See id.* § 1268(f); *see also* 53 Fed.Reg. at 38,875. In addition, OSM or the state regulatory authority can use the information required under section 507(b) to determine who the real applicant is—*i.e.*, to pierce the corporate veil in cases of subterfuge in order to ensure that it has the true applicant before it.

Finally, we reject appellees' argument that subsequently enacted appropriations acts demonstrate that Congress intended OSM to look beyond those operations owned or controlled by the applicant. These acts state, in relevant part:

> [N]one of these funds shall be used for a reclamation grant to any State if the State has not agreed to participate in a nationwide data system established by [OSM] through which all permit applications are reviewed and approvals withheld if the applicants (or those who control the applicants) applying for or receiving such permits have outstanding . . . violations in accordance with section 510(c) of [SMCRA]. . . .

*See, e.g.*, Act of Nov. 5, 1990, Pub.L. No. 101–512, 104 Stat.1915, 1928; Act of Oct. 23, 1989, Pub.L. No. 101–121, 103 Stat. 701, 712. The acts specifically state that permits should be blocked "in accordance with section 510(c)," and, as noted above, we find section 510(c) to be unmistakably clear—only those operations owned or controlled *by* the applicant are relevant. Some confusion is introduced by the fact that the acts dictate that states cannot receive reclamation grants unless permits are withheld when "applicants (or those who control the applicants)" are in violation of SMCRA. As an initial matter, it should be noted that this language is not as broad as the ownership and control rule, so it cannot be said that Congress has demonstrated a clear intention to endorse OSM's rule. In

any case, because the appropriations acts state that permits should be withheld "in accordance with section 510(c)," and because we find section 510(c) clear, we reject appellees' argument that these appropriations acts override the plain meaning of section 510(c).

Accordingly, we hold that the ownership and control rule is unlawful. In addition, both the permit-information rule, 30 C.F.R. §§ 773.17(i), 778.10, 778.13, 778.14, 843.11(g), and the permit-rescission rule, *id.* §§ 773.20, 773.21, 843.21, are centered on the ownership and control rule. *See, e.g., id.* § 778.13(d) (requiring permit information pertaining to "any surface coal mining operation owned or controlled by either the applicant or by any person who owns or controls the applicant under the definition of 'owned or controlled' and 'owns or controls' in [30 C.F.R.] § 773.5"); *id.* § 773.20(b)(1)(iii) (stating that when "the permittee was linked to the violation, penalty, or fee through ownership or control ... at the time the permit was issued," and "an ownership or control link between the permittee and the person responsible for the violation, penalty, or fee still exists," the permit shall be found to be improvidently issued); *see also* 54 Fed.Reg. at 8,982 (stating that the permit-information rule "conforms" the permit requirements to the ownership and control rule); 54 Fed.Reg. at 18,438 (stating that the "general purpose" of the permit-rescission rule is to "provide corrective measures for bringing ... permits into compliance" in light of the ownership and control rule). As a result, they too must fall.

## III. CONCLUSION

We hold that OSM's ownership and control rule violates the first step of *Chevron* and, therefore, is unlawful. In addition, because the permit-information rule and the permit-rescission rule are founded on the ownership and control rule, we also find these rules to be unlawful. Accordingly, the District Court's grant of summary judgment is hereby reversed, and the petition for review is granted.