United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued February 8, 1999 Decided May 28, 1999 

 No. 97-5202

 National Mining Association, 
 Appellant

 v.

 United States Department of the Interior, et al., 
 Appellees

 Consolidated with 
 Nos. 97-5203, 97-5204, 98-5248

 Appeals from the United States District Court 
 for the District of Columbia 
 (No. 88cv03464) 
 (No. 89cv01167) 
 (No. 89cv01751) 
 (No. 97cv01418) 

 ---------

 Thomas C. Means argued the cause for the appellant. 
John A. MacLeod, J. Michael Klise and Harold P. Quinn, Jr. 
were on brief for the appellant

 Ellen D. Katz, Attorney, United States Department of 
Justice, argued the cause for the federal appellees. Lois J. 
Schiffer, Assistant Attorney General, and Martin W. Matzen, 
Attorney, United States Department of Justice, were on brief 
for the appellees. John T. Stahr, Attorney, United States 
Department of Justice, entered an appearance.

 Glenn P. Sugameli argued the cause for appellee National 
Wildlife Federation. Thomas J. FitzGerald was on brief.

 Before: Wald, Silberman and Henderson, Circuit Judges.

 Opinion for the court filed by Circuit Judge Henderson.

 Karen LeCraft Henderson, Circuit Judge: Section 510(c) 
of the Surface Mining Control and Reclamation Act of 1977 
(SMCRA) requires a surface mining permit applicant to file 
"a schedule listing any and all notices of violations of this 
chapter and any law, rule, or regulation of the United States, 
or of any department or agency in the United States pertain-
ing to air or water environmental protection incurred by the 
applicant in connection with any surface coal mining operation 
during the three-year period prior to the date of application." 
30 U.S.C. s 1260(c). The section further provides that 
"[w]here the schedule or other information available to the 
regulatory authority indicates that any surface coal mining 
operation owned or controlled by the applicant is currently in 
violation of this chapter or such other laws referred to this 
subsection [sic], the permit shall not be issued until the 
applicant submits proof that such violation has been corrected 
or is in the process of being corrected to the satisfaction of 
the regulatory authority, department, or agency which has 
jurisdiction over such violation." Id. To implement section 
510(c) the Office of Surface Mining, Reclamation and Enforce-
ment, United States Department of the Interior, (OSM) pro-
mulgated three final rules: the Ownership and Control Rule, 
53 Fed. Reg. 38,868 (1988); the Permit Information Rule, 54 
Fed. Reg. 8982 (1989); and the Permit Rescission Rule, 54 

Fed. Reg. 18,438 (1989). In consolidated district court ac-
tions the National Mining Association (NMA) challenged all 
three final rules and the district court granted summary 
judgment to OSM in each action. See National Wildlife 
Fed'n v. Babbitt, Nos. 88cv3117, 88cv3464, 88cv3470 (D.D.C. 
filed Aug. 31, 1995); National Wildlife Fed'n v. Babbitt, Nos. 
89cv1130, 89cv1167 (D.D.C. filed Aug. 31, 1995); National 
Wildlife Fed'n v. Babbitt, Nos. 89cv1751, 89cv1811 (D.D.C. 
filed Aug. 31, 1995). In NMA v. United States Dep't of 
Interior, 105 F.3d 691 (D.C. Cir. 1997), (NMA I) this court 
reversed the district court, holding that the Ownership and 
Control Rule's broad construction of the statute--that OSM 
could block permits based on ongoing environmental viola-
tions by "upstream" owners or controllers of the permit 
applicant--"conflicts with the plain meaning of section 
510(c)," 105 F.3d at 693, which authorizes denial of a permit 
based on violations only of "downstream" operations, that is, 
ones that are "owned or controlled by the applicant," 30 
U.S.C. s 1260(c). We further concluded that, "because the 
permit-information rule and the permit-rescission rule are 
centered on the Ownership and Control Rule, they too must 
fall." 105 F.3d at 693. Finding the ownership and control 
defect so fundamental to OSM's permit blocking regime, the 
court vacated all three rules in toto, without reaching NMA's 
objections to other aspects of the rules.

 In response to the decision in NMA I, OSM issued an 
Interim Final Rule, 62 Fed. Reg. 19,450 (1997), (IFR), which 
largely reenacts the provisions of the three vacated rules but 
without the offending "upstream" provisions.1 NMA chal-
lenged the new IFR in the district court by moving for 
enforcement of the NMA I mandate in the consolidated 
actions and by filing a separate action, No. 97cv01418, to 
independently challenge the IFR. In each case NMA raised 
many of the objections we found it unnecessary to reach in 
NMA I. The district court denied the motions for enforce-

__________
 1 OSM has since proposed new permit rules. See 63 Fed. Reg. 
70,580 (Dec. 21, 1998) (proposed rules); 64 Fed. Reg. 23,811 (May 4, 
1999) (reopening and extending comment period to May 10, 1999).

ment, dismissed the consolidated actions and granted sum-
mary judgment in the newly filed IFR action, rejecting each 
of NMA's challenges. Reviewing the IFR de novo, as we 
must, see National Coal Ass'n v. Lujan, 979 F.2d 1548, 1553 
(D.C. Cir. 1992), we reverse the district court's summary 
judgment in No. 97cv01418, challenging the IFR. Because 
our review of that action disposes of the issues raised in 
Appeal Nos. 97-5202, 97-5203, 97-5204 (from the mandate 
enforcement denials in Nos. 88cv03464, et al.), we dismiss 
those appeals as moot.2 We now address seriatim NMA's 
various objections to the IFR.3

 I. "Ownership and Control"

 NMA asserts that the IFR reaches more broadly down-
stream than the statute permits in two respects.

 First, NMA contends the IFR authorizes permit-blocking 
based on an applicant's ownership and control not only of a 
violating "operation," as the statute explicitly directs, but also 
of other entities that in turn own or control a violating 
operation. NMA is correct that the IFR authorizes permit-
blocking based on apparently limitless downstream violations. 
See 30 C.F.R. s 773.15(b)(1) ("Based on a review of all 
reasonably available information concerning violation notices 

__________
 2 In an order filed August 20, 1997, denying NMA's motion to 
recall and enforce the mandate in NMA I, we stated: "[A]ny 
challenges appellant wishes to raise concerning the revised regula-
tions should be presented in the first instance in the form of a new 
complaint." Accordingly, we resolve NMA's challenges in its appeal 
from the summary judgment in No. 97cv01418, the action NMA 
filed (on June 20, 1997) specifically to challenge the IFR.

 3 We do not address NMA's due process arguments which are 
addressed to OSM's 1994 procedural rules, see 43 C.F.R. ss 4.1370-
4.1377. The 1994 rules were not challenged below but were con-
tested in a separate action, No. 88cv3464, an appeal from which is 
pending in this court. See NMA v. Department of Interior, No. 
96-5274 (D.C. Cir. filed Sept. 11, 1996). NMA has represented that 
it "would not oppose deferring consideration" of due process to the 
other appeal. Reply Br. at 20.

involving either the applicant or any person owned or con-
trolled by the applicant, ... the regulatory authority may not 
issue the permit if any surface coal mining and reclamation 
operation owned or controlled by the applicant is currently in 
violation....") (emphasis added); id. s 773.20 (authorizing 
regulatory agency to rescind permit "[w]hen the regulatory 
authority finds that the permit was improvidently issued" 
under 30 C.F.R. s 773.15(b)(1)). The statute itself, however, 
requires not that the violating operation be directly owned by 
the applicant but that it be either "owned or controlled by the 
applicant." 30 U.S.C. s 1260(c) (emphasis added). OSM has 
construed this language to include a downstream operation 
controlled, albeit not owned, by the applicant through owner-
ship and control of intermediary entities. This view is consis-
tent with, if not mandated by, the statutory language which, 
as noted, applies to any violating operations "controlled by 
the applicant," not only those directly owned by him. Ac-
cordingly, the agency's construction must be upheld. See 
National Coal Ass'n v. Lujan, 979 F.2d 1548, 1555 (D.C. Cir. 
1992) ("We must defer to [OSM's] interpretation of 
[SMCRA's] 'same penalties' provision unless the agency's 
reading is contrary to the statute's instruction, or is unrea-
sonable.") (citing Chevron U.S.A., Inc. v. Natural Resources 
Defense Council, Inc., 467 U.S. 837, 842-43 (1984)).

 Second, NMA asserts the IFR oversteps OSM's statutory 
authority insofar as it allows permit blocking based on a 
violation by an entity that the applicant formerly owned or 
controlled but does no longer. On this we agree. The 
statute expressly authorizes permit-blocking "when an opera-
tion owned or controlled is currently in violation" of environ-
mental laws. 30 U.S.C. s 1260(c). The legislative history 
indicates, as the statutory language suggests, that the Con-
gress intended to authorize a permit block only when an 
applicant, through ownership or control, is in violation at the 
time of application. See S. Rep. No. 85-128 at 79 ("This 
subsection prohibits issuance of a mining permit if the appli-
cation indicated the applicant to be in violation of the act or a 
wide range of other environmental requirements.") (emphasis 
added). For violations of an operation that the applicant "has 

controlled" but no longer does, and for which it therefore 
lacks power to effect abatement, the Congress authorized 
permit-blocking only if there is "a demonstrated pattern of 
willful violations of this chapter of such nature and duration 
with such resulting irreparable damage to the environment as 
to indicate an intent not to comply with the provisions of this 
chapter." 30 U.S.C. s 1260(c). Thus, to the extent the IFR 
authorizes permit-blocks based on past ownership and control 
without such a pattern,4 it contravenes the statute and cannot 
be upheld.

 NMA also challenges the IFR's rebuttable presumptions of 
ownership or control set forth in 30 C.F.R. s 773.5(b). IFR 
section 773.5(b) "presumes" ownership or control from certain 
relationships between the applicant and a downstream entity 
"unless a person can demonstrate that the person subject to 
the presumption does not in fact have the authority directly 
or indirectly to determine the manner in which the relevant 
surface coal mining operation is conducted." Under subsec-
tions (1) to (6) of section 773.5(b) the rebuttable presumption 
applies to a person who (1) is an officer or director of a 
company, (2) operates a surface coal mining operation, (3) 
controls the assets of an entity, (4) is general partner in a 
partnership, (5) owns 10 to 50 per cent of an entity or (6) 
owns or controls the coal to be mined (through lease, sublease 
or other contract) and has either the right to receive the coal 
after mining or the authority to determine the manner in 
which the surface coal mining operation is controlled.5 NMA 
contends that the presumptions in subsections (1), (3), (4) and 

__________
 4 The IFR does not explicitly authorize such a block but OSM has 
so applied it at least once. See Virginia Iron, Coal & Coke Co. v. 
Babbitt, C.A. No. 95-0227 (W.D. Va filed Apr. 4, 1995) (dismissing 
for unripeness).

 5 The presumptions have been omitted from OSM's new proposed 
rules. See 63 Fed. Reg. at 70,583-84 ("The current presumptions 
that ownership or control exists would be replaced with a require-
ment that the regulatory authority make a finding of actual owner-
ship or control.").

(5) are invalid. We agree as to subsections (1) and (5) but not 
as to subsections (3) and (4).6

 In reviewing regulatory presumptions we must defer to the 
agency's judgment, see Atchison, Topeka & Santa Fe Ry. v. 
ICC, 580 F.2d 623, 629 (D.C. Cir. 1978), but "an evidentiary 
presumption is 'only permissible if there is a sound and 
rational connection between the proved and inferred facts, 
and when proof of one fact renders the existence of another 
fact so probable that it is sensible and timesaving to assume 
the truth of [the inferred] fact ... until the adversary dis-
proves it,' " NMA v. Babbitt, No. 98-5320, slip op. at 8-9 
(D.C. Cir. Apr. 27, 1999) (quoting Secretary of Labor v. 
Keystone Chem. Co., 151 F.3d 1096, 1100-01 (D.C. Cir. 1998) 
(internal quotations omitted) (alterations in original)). " 'If 
there is an alternate explanation for the evidence that is also 
reasonably likely, then the presumption is irrational.' " Id. at 
9 (quoting Keystone Chem. Co., 151 F.3d at 1101). The 
presumptions enumerated in subsections (1) and (5) fail this 
test because the relationships identified in them do not suffi-
ciently indicate ownership or control.7 Being an officer or 

__________
 6 Because NMA has not specifically challenged the presumptions 
in subsections (2) and (6), we do not decide their validity.

 7 SM points out that SMCRA itself requires that several of the 
same relationships be identified in a mining permit application. See 
30 U.S.C. s 1257(b)(4) ("The permit application ... shall contain, 
among other things-- ... if the applicant is a partnership, corpora-
tion, association, or other business entity, the following where 
applicable: the names and addresses of every officer, partner, 
director, or person performing a function similar to a director, of 
the applicant, together with the name and address of any person 
owning, of record 10 per centum or more of any class of voting 
stock of the applicant and a list of all names under which the 
applicant, partner, or principal shareholder previously operated a 
surface mining operation within the United States within the five-
year period preceding the date of submission of the applica-
tion...."). The statute requires this, however, only for entities 
upstream from the applicant, not for downstream entities whose 
ownership or control may disqualify an applicant. In any event, to 

director does not by itself enable an entity to control the 
company or its operations, as subsection (1) presumes. See 
American Law Institute, Principles of Corporate Governance: 
Analysis and Recommendations s 1.08(a)(c) (Proposed Final 
Draft 1992) ("A person is not in control of a business organi-
zation solely because the person is a director or principal 
manager of the organization"); Louis Loss & Joel Seligman, 
Securities Regulation 1724 & n.46 (3d ed. 1990) ("[A] person's 
being an officer or director does not create any presumption 
of control.") (emphasis in original); Burgess v. Premier Corp., 
727 F.2d 826, 832 (9th Cir. 1984) ("A director 'is not automati-
cally liable as a controlling person. There must be some 
showing of actual participation in the corporation's operation 
or some influence before the consequences of control may be 
imposed.' ") (interpreting section 10(b) of the Securities Ex-
change Act of 1934, 15 U.S.C. s 78j; quoting Herm v. Staf-
ford, 663 F.2d 669, 684 (6th Cir. 1981); citing Cameron v. 
Outdoor Resorts of Am., Inc., 608 F.2d 187, 194-195 (5th Cir. 
1979), modified, 611 F.2d 105 (5th Cir. 1980) (per curiam)). 
Nor has OSM offered any basis to support subsection (5)'s 
presumption that an owner of as little as ten per cent of a 
company's stock controls it. While ten per cent ownership 
may, under specific circumstances, confer control, OSM has 
cited no authority for the proposition that it is ordinarily 
likely to do so.8 Accordingly we hold that the presumptions 
in subsections (1) and (5) are invalid.9

__________
require identification of a particular relationship does not mean to 
presume control from it.

 8 In its brief OSM referred the court to several regulations 
promulgated by other agencies but none of them presumes control 
based simply on a ten per cent ownership stake, although another 
Department of Interior regulation does so. See 30 C.F.R. 
s 206.101(b) ("based on the instruments of ownership of the voting 
securities of an entity, or based on other forms of ownership: ... 
(b) Ownership of 10 through 50 percent creates a presumption of 
control"). We do not consider the validity of section 206.101 here.

 9 Because we invalidate these presumptions on the ground they 
do not sufficiently show control, we need not address NMA's 

 By contrast the presumptions in subsections (3) and (4) are 
well-grounded. There is nothing strained about section (3)'s 
presumption that one "[h]aving the ability to commit the 
financial or real property assets or working resources of an 
entity" controls it. The ability to control assets goes hand-in-
hand with control and is typically entrusted, along with 
general managerial authority, to a single officer, often the 
president. See University of R.I. v. A.W. Chesterton Co., 2 
F.3d 1200, 1214 (1st Cir. 1993) ("[T]he hand that holds all the 
purse strings presumably controls the dependent entity."); 2 
W. Fletcher, Cyclopedia of the Law of Private Corporations 
s 466 (rev. ed. 1998). As for subsection (4)'s presumption 
that control vests in each general partner, it naturally flows 
from "the tenet of partnership law that a general partner has 
control of partnership affairs as against the outside world." 
Moving Phones Partnership L.P. v. FCC, 998 F.2d 1051, 1055 
(D.C. Cir. 1993) (citing Uniform Partnership Act s 9 (1914); 
Picone v. Commercial Paste Co., 215 Miss. 114, 60 So.2d 590 
(1952)); see DSE, Inc. v. United States, 169 F.3d 21, 32 (D.C. 
Cir. 1999) ("A General Partner in a limited partnership has all 
the rights and powers of a General Partner in a General 
Partnership. Thus, a General Partner in a limited partner-
ship is also presumptively in control of the limited partner-
ship for purposes of the [SBA] affiliation regulation.").10

 II. Statute of Limitations and Retroactivity

 NMA next contends the IFR violates the five-year statute 
of limitations governing penalty enforcement, 28 U.S.C. 
s 2462, because it authorizes permit-blocking based on viola-

__________
alternative contention that the presumptions violate established 
principles of stockholder and director liability.

 10 We do not address NMA's contention that the IFR's rebuttable 
presumptions of ownership shift the burden of proof to the permit-
tee in violation of the Administrative Procedure Act, 5 U.S.C. 
s 556(d). The challenged burden framework is set out not in the 
IFR but in OSM's procedural rules, see 43 C.F.R. ss 4.1374(b), 
4.1384(b), which are subject to appeal in a separate pending action. 
See supra note 3.

tions more than five years old. In addition, it claims the IFR 
has retroactive effect in blocking permits based on violations 
that attached to an applicant before November 2, 1988, the 
effective date of the Ownership and Control Rule. We con-
clude the section 2462 limitation period does not apply to the 
permit blocks because the Congress intended to exempt them 
from its scope but agree that the IFR is impermissibly 
retroactive insofar as it reaches back before November 2, 
1988.

 Section 2462 provides:

 Except as otherwise provided by Act of Congress, an 
 action, suit or proceeding for the enforcement of any civil 
 fine, penalty, or forfeiture, pecuniary or otherwise, shall 
 not be entertained unless commenced within five years 
 from the date when the claim first accrued if, within the 
 same period, the offender or the property is found within 
 the United States in order that proper service may be 
 made thereon.
 
28 U.S.C. s 2462. By the statute's express terms, its limita-
tion period is inapplicable where "otherwise provided by Act 
of Congress"--and SMCRA so provides. Section 510(c) ex-
pressly directs the appropriate regulatory authority to deny 
permits "[w]here the schedule or other information available 
to the regulatory authority indicates that any surface coal 
mining operation owned or controlled by the applicant is 
currently in violation" of environmental laws, irrespective of 
when the claim first accrued. 30 U.S.C. s 1260(c) (emphasis 
added). Because the statute expressly requires permit block-
ing based on current, ongoing violations, whenever first com-
mitted, we conclude that the Congress intended to exempt 
permit denials from section 2462's limitation period. Cf. 
Mullikin v. United States, 952 F.2d 920, 924-29 (6th Cir. 
1991) (s 2462 not applicable to assessing tax-fraud penalties 
under 26 U.S.C. s 6701 because "[i]t is the Court's view that 
it was the intent of Congress in enacting Section 6701 that 
there be no statute of limitations governing the assessment of 

penalties"), cert. denied, 506 U.S. 827 (1992); Lamb v. United 
States, 977 F.2d 1296 (8th Cir. 1992) (following Mullikin).11

 The rule against retroactivity is not so easily avoided. An 
administrative rule is retroactive if it "takes away or impairs 
vested rights acquired under existing law, or creates a new 
obligation, imposes a new duty, or attaches a new disability in 
respect to transactions or considerations already past." As-
sociation of Accredited Cosmetology Schs. v. Alexander, 979 
F.2d 859, 864 (D.C. Cir. 1992) (citation omitted). OSM's view 
of controller liability, first promulgated in the 1988 Ownership 
and Control Rule and retained in the IFR, imposes a "new 
disability," permit ineligibility, based on "transactions or con-
siderations already past," namely pre-rule violations by mine 
operators over whom permit applicants acquired control be-
fore the rule's effective date.12 Before the rule took effect 
there was no clear liability under the statute for violations by 
entities indirectly controlled by the applicant. While OSM's 
construction of section 510(c)--to impose liability for such 
downstream violations--is a reasonable one, see supra Part I, 
it is not mandated by the statutory language. Where before 
there was "a range of possible interpretations" of the statuto-
ry language--including imposing liability only for violations 
by the applicant's own, directly controlled operations--the 

__________
 11 We recognize that the Fourth Circuit has held that section 2462 
does apply to permit blocking under section 510(c). See Arch 
Mineral Corp. v. Babbitt, 104 F.3d 660 (4th Cir. 1997). The Arch 
court, however, based its holding on the premise that, contrary to 
OSM's position, a permit block is an "action, suit or proceeding for 
the enforcement of any civil fine, penalty, or forfeiture," without 
considering whether the Congress in enacting SMCRA intended to 
exempt such blocks from section 2462. Because we hold that the 
Congress intended no limitation period for the permit blocks, we 
need not decide whether such blocks are, as Arch held, "penal" or, 
as OSM maintains, "remedial."

 12 In the case of pre-rule violations by operators over whom an 
applicant assumed control after the rule issued, the regulation is not 
retroactive because the applicant's disability is "in respect to" its 
assumption of control, a transaction occurring after the effective 
date.

rule established "a precise interpretation," which "in a sense 
changes the legal landscape." Health Ins. Ass'n of Am., Inc. 
v. Shalala, 23 F.3d 412, 423-24 (D.C. Cir. 1994), cert. denied, 
513 U.S. 1147 (1995). Applying the rule's specific interpreta-
tion to impose liability based on pre-rule acts therefore gives 
it retroactive effect which OSM can do only if authority 
therefor is "conveyed by Congress in express terms." Bowen 
v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988) (citations 
omitted); see also Health Ins. Ass'n of Am., Inc., 23 F.3d at 
422-25. Because section 510(c) contains no "express terms" 
authorizing retroactive liability, we hold that the IFR is 
invalid insofar as it block permits based on transactions 
(violations and control) antedating November 2, 1988, the 
Ownership and Control Rule's effective date.

 III. The Notice of Violation Schedule

 Next, NMA asserts the IFR is ultra vires in that it directs 
applicants to submit information not expressly required to be 
included in a permit application under section 507(b) of 
SMCRA, 30 U.S.C. s 1257(b), or in the notice of violation 
schedule under section 510(c). This court has already held, 
however, "that the Act's explicit listings of information re-
quired of permit applicants [in sections 507 and 508] are not 
exhaustive, and do not preclude the Secretary from requiring 
the states to secure additional information needed to ensure 
compliance with the Act." In re Permanent Surface Mining 
Regulation Litig., 653 F.2d 514 (D.C. Cir.) (en banc), cert. 
denied, 454 U.S. 822 (1981). Because section 510 is by its 
terms no more exhaustive than sections 507 and 508, we 
conclude the Secretary may require schedule information not 
specifically listed in any of the cited provisions of the Act.

 NMA also contends the IFR's schedule provisions are 
arbitrary in requiring that an applicant submit information in 
the control of "third parties," namely, entities it is presumed 
to control under 30 C.F.R. s 773.5(b). Again we disagree. 
The IFR provides an escape hatch for an applicant who is 
unable to obtain the specified information. It can use that 

very inability to rebut the presumption of control and thereby 
avoid liability.

 IV. Improvidently Issued Permits

 Next, NMA contends the IFR regulations authorizing a 
regulatory agency to suspend or rescind an "improvidently 
issued permit" (IIP), see 30 C.F.R. ss 773.20(c), 773.21, are 
ultra vires because section 510(c) authorizes only denials of 
new permits. While it is true that section 510(c) does not 
expressly provide for suspension or rescission of existing 
permits, the IFR rescission and suspension provisions reflect 
a permissible exercise of OSM's statutory duty, pursuant to 
section 201(c)(1) of SMCRA, to "order the suspension, revoca-
tion, or withholding of any permit for failure to comply with 
any of the provisions of this chapter or any rules and regula-
tions adopted pursuant thereto." 30 U.S.C. s 1211(c). The 
IIP provisions simply implement the Congress's general di-
rective to authorize suspension and rescission of a permit "for 
failure to comply with" a specific provision of SMCRA--
namely, section 510(c)'s permit eligibility condition. In addi-
tion, apart from the express authorization in section 1211(c), 
OSM retains "implied" authority to suspend or rescind im-
providently provided permits because of its express authority 
to deny permits in the first instance. See Gun S., Inc. v. 
Brady, 877 F.2d 858, 862 (11th Cir. 1989) (although "neither 
the [Gun Control Act, 18 U.S.C. ss 921 et seq.,] nor its 
regulations explicitly authorizes suspension" of permittee's 
firearm importation permit, Bureau of Alcohol, Tobacco and 
Firearms, which is authorized to grant permit, "must neces-
sarily retain the power to correct the erroneous approval of 
firearms import applications") (citations omitted).

 NMA also contends the IIP provisions impinge on the 
"primacy" afforded states under SMCRA insofar as they 
authorize OSM to take remedial action against operators 
holding valid state mining permits without complying with the 
procedural requirements set out in section 521(a) of SMCRA, 
30 U.S.C. s 1271(a). On this point we agree.

 Under SMCRA's state primacy regime, once a state permit 
plan is approved "the Secretary's role is primarily one of 
oversight" and "the state has the primary responsibility for 
achieving the purposes of the Act." In re Permanent Surface 
Mining Regulation Litig., 653 F.2d at 519; see also 30 U.S.C. 
s 1201(f) ("[T]he primary governmental responsibility for de-
veloping, authorizing, issuing, and enforcing regulations for 
surface mining and reclamation operations subject to this 
chapter should rest with the States...."). Even the Secre-
tary's oversight role is strictly circumscribed by the Act. "As 
long as the state properly enforces its approved program, it is 
the exclusive 'on the scene' regulatory authority," 653 F.2d at 
519 (footnote omitted), and the Secretary's role is limited to 
making "such inspections of any surface coal mining and 
reclamation operations as are necessary to evaluate the ad-
ministration of approved State programs," 30 U.S.C. 
s 1267(a). Nevertheless, "[i]n the event that a State has a 
State program for surface coal mining, and is not enforcing 
any part of such program, the Secretary may provide for the 
Federal enforcement, under the provisions of section 1271 of 
[title 30], of that part of the State program not being enforced 
by such State." 30 U.S.C. s 1254(b). Section 1271 sets out 
specific procedural requirements to be met before the Secre-
tary may take remedial action against a state permittee 
(whether based on a federal inspection or section 1254(b) or in 
the course of enforcing a state program under section 
1271(b)13). First, if the Secretary "determines that any per-
mittee is in violation of any requirement of [SMCRA] or any 
permit condition required by [SMCRA]" that does not create 
an imminent danger to health and safety,14 then the Secretary 
can issue a notice of violation setting a time period in which to 

__________
 13 Section 1271(b) authorizes the Secretary, if he believes that 
violations have occurred because a state has failed to effectively 
enforce a state program, to assume enforcement of all or part of the 
state program, enforcing permit conditions, granting new or revised 
permits and issuing necessary orders. 30 U.S.C. s 1271(b).

 14 Section 521 provides for prompt remedial federal action in the 
case of a violation that creates an "imminent danger." See 30 
U.S.C. s 1271(a)(1)-(2).

abate the violation and providing opportunity for public hear-
ing. 30 U.S.C. s 1271(a)(3). Only after the abatement peri-
od has expired and upon a "written finding ... that the 
violation has not been abated" can the Secretary suspend the 
violating operations, in an order setting out "the steps neces-
sary to abate the violation in the most expeditious manner 
possible." Id. The IFR's IIP enforcement provisions, by 
contrast, permit OSM to issue a notice of violation to a 
permittee and to order cessation of mining operations by a 
specified date--unless the permittee by then undertakes re-
medial measures "to the satisfaction of the responsible agen-
cy"--when OSM "has reason to believe that a State surface 
coal mining and reclamation permit meets the criteria for an 
improvidently issued permit in [30 U.S.C.] s 773.20(b) or the 
State program equivalent, and the State has failed to take 
appropriate action on the permit under State program equiva-
lents of [30 C.F.R.] ss 773.20 and 773.21." 30 C.F.R. 
s 843.21(a). Because the Congress established specific pro-
cedures in section 521(a)(3) of SMCRA that the Secretary 
must follow before taking remedial action against a state 
permittee, we conclude those procedures must be used when 
OSM seeks to revoke a permit issued by the state under its 
state plan.

 For the foregoing reasons, we dismiss as moot Appeal Nos. 
97-5202, 97-5203 and 97-5204. In Appeal No. 97-5248 we 
reverse the district court's judgment insofar as it rejected 
NMA's claims that the IFR authorizes permit blocks based 
on violations by operations no longer controlled by an appli-
cant, establishes rebuttable presumptions of ownership and 
control, allows impermissibly retroactive permit blocks and 
violates state primacy and we remand to the district court for 
remand to OSM to amend its permit block regime according-
ly.

 So ordered.